# Reimbursement for Detail of Judge Advocate General Corps Personnel to a United States Attorney's Office

The Economy Act requires the Department of Defense to be reimbursed for the detail of Judge Advocate General Corps attorneys to a United States Attorney's Office.

The authority of the Director of National Drug Control Policy temporarily to reassign federal personnel under the Anti-Drug Abuse Act of 1988 does not displace the requirements of the Economy Act.

June 27, 1989

MEMORANDUM OPINION FOR THE ACTING ASSOCIATE ATTORNEY GENERAL

You have asked for our opinion whether the United States Attorney's Office for the District of Columbia ("DCUSA") must reimburse the Department of Defense ("DOD") for costs associated with the detail of ten lawyers from the Judge Advocate General Corps ("JAGC") to the DCUSA for one year pursuant to an official request by the Director of National Drug Control Policy William Bennett ("Director"), under sections 1003(d)(2) or 1005(c)(1)(A) of the Anti-Drug Abuse Act of 1988 ("the 1988 Act"), Pub. L. No. 100-690, 102 Stat. 4181 (codified at 21 U.S.C. §§ 1502(d)(2), 1504(c)(1)(A).[1] DOD contends that DCUSA must reimburse the various departments from which JAGC personnel would be detailed for salaries and expenses, at an estimated cost of $300,000.

For the reasons stated below, we conclude that the Economy Act, 31 U.S.C. § 1301,* requires reimbursement for the detailed JAGC personnel, and that the Director's authority temporarily to reassign federal personnel under the 1988 Act does not displace the requirements of the Economy Act. However, the 1988 Act provides for the Director to report to the Congress regarding the need for any transfer of appropriated funds for National Drug Control Program activities. 21 U.S.C. § 1502(c)(6). To the extent this situation may be deemed to present a need for such a

---

[1] Memorandum for William P. Barr, Assistant Attorney General, Office of Legal Counsel, from Joe D. Whitley, Acting Associate Attorney General (May 12, 1989) See Letter for Joe D Whitley, Acting Associate Attorney General, from Jay B Stephens, United States Attorney for the District of Columbia (May 9, 1989).

* Editor's Note: This opinion incorrectly refers to 31 U S.C § 1301 as the Economy Act, when that Act is actually codified at 31 U.S.C. § 1535. This mistake in terminology does not affect the conclusions or essential analysis of the opinion

transfer, the Director's report is the appropriate vehicle for seeking such a transfer of funds.

## Analysis

### 1. The Economy Act

Under the Economy Act, a federal agency must spend its funds on the objects for which they were appropriated. 31 U.S.C. § 1301(a). A corollary to this statutory rule is that an agency may not augment its appropriations from outside sources without specific statutory authority. *See generally* United States General Accounting Office, Office of General Counsel, *Principles of Federal Appropriations Law* 5-62 to 5-63 (1st ed. 1982) (explaining the non-augmentation theory). In combination, these rules require an agency to spend its appropriated funds — and only its appropriated funds — as directed by its relevant appropriation legislation. These dual requirements consistently have been interpreted as generally prohibiting the detail of employees from one federal agency to another on a nonreimbursable basis. As the Comptroller General has held, "[t]o the extent that agencies detail employees on a nonreimbursable basis ... they may be avoiding congressional limitations on the amount of moneys appropriated to the receiving agency for particular programs." 64 Comp. Gen. 370, 380 (1985).[2]

Three exceptions to the general rule against nonreimbursable details have been recognized. First, Congress may, of course, specifically authorize nonreimbursable details by statute. *See, e.g.*, 5 U.S.C. § 3343 (authorizing nonreimbursable details to international organizations). Second, a loaning agency may authorize nonreimbursable details involving "a matter [that is] similar or related to matters ordinarily handled by the loaning agency and will aid the loaning agency in accomplishing a purpose for which its appropriations are provided." 64 Comp. Gen. 370, 380 (1985) (concluding that nonreimbursable detail of employees to other agencies or to different programs within the same agency is unlawful; opinion given prospective application only); *see also* 65 Comp. Gen. 635, 637

---

[2] The Comptroller General is an officer of the legislative branch, *see Bowsher v Synar*, 478 U S 714, 727-32 (1986), and historically, the executive branch has not considered itself bound by the Comptroller General's legal opinions if they conflict with the legal opinions of the Attorney General and the Office of Legal Counsel. Under some circumstances the opinions supply valuable guidance, however, and this Office generally has found these opinions persuasive on the application of the Economy Act to the question of nonreimbursable details *See* Memorandum for Arthur B. Culvahouse, Jr., Counsel to the President, from Douglas W Kmiec, Assistant Attorney General, Office of Legal Counsel, *Re Executive Agency Assistance to the Presidential Transition* at 3 (Jan 3, 1989) ("Kmiec Memo"); *Reimbursement of the Internal Revenue Service for Investigative Services Provided to the Independent Counsel*, 12 Op O.L C 233 (1988); *Assignment of Army Lawyers to the Department of Justice*, 10 Op. O L.C 115, 118 (1986) With one exception described in footnote 3 below, the Comptroller General's construction of appropriations law is consistent with our interpretation here

(1986) (detail of administrative law judges from National Labor Relations Board to Department of Labor to hear black lung cases is not directly related to the objects of NLRB's appropriations and therefore must be reimbursed). Third, the Comptroller General would recognize a de minimis exception for details that have a negligible effect on the loaning agency's appropriations. *Cf.* 65 Comp. Gen. 635, 637 (1985) ($674,250 for costs of detail of 15-20 NLRB employees to Department of Labor not de minimis).[3]

Neither of the latter two exceptions applies here. Even assuming that the de minimis exception is lawful, we would not regard this detail, which would cost DOD approximately $300,000, as having a negligible effect on DOD's appropriations. The exception for details involving matters related to the loaning agency's appropriations also does not appear applicable here. JAGC lawyers ordinarily do not engage in civilian litigation.[4] A case can be made that nonreimbursable details should be allowed when the loaning agency is the "client" on whose behalf litigation is undertaken, such as if the JAGC attorneys were to be used for military matters or military prosecutions. In such cases, the detailed personnel would provide specialized knowledge or assistance related to the objects of their agency's appropriations. The reassignment of JAGC attorneys to DCUSA pursuant to the 1988 Act does not meet these criteria, however. Rather, the apparent purpose of the reassignment is to provide additional personnel for prosecution of civilians for narcotics and narcotics-related offenses committed in the District of Columbia.

In U.S. Attorney Jay B. Stephens' letter of May 9, 1989, to Acting Associate Attorney General Joe D. Whitley, reference is made to the DCUSA's "long history of maintaining a nonreimbursable Specials Program which involves the assignment of attorney personnel from various federal agencies to this Office for a period of four to six months." However, we understand those short-term details to have had a different purpose — the training of inexperienced trial attorneys. Details for such purposes might well fall within the exception for details involving matters related to the loaning agency's appropriation, in that intensive training in litigation skills may assist the loaning agency by improving the abilities and performance of its attorney personnel.[5] While the DCUSA doubtless also receives a benefit from the detail of attorneys under the Specials Program, the primary *purpose* of the program appears to be for the training of the detailed attorneys.

---

[3] Prior opinions of this Office have regarded the "de minimis exception" with some caution. *See* Kmiec Memo at 7 n 8 The Comptroller General's opinions acknowledge that the de minimis exception actually violates 31 U S C § 1301(a). *See* 65 Comp Gen. at 638; 64 Comp. Gen at 381.

[4] We have reached this conclusion in a prior memorandum. *See* 10 Op O L.C. at 118 & n.4 (discussing circumstances under which JAGC attorneys may be detailed to Department of Justice to assist in litigation).

[5] We do not here address the validity of the Specials Program at the DCUSA

190

In contrast, the reassignment of JAGC attorneys pursuant to the 1988 Act does not appear to be for the purpose of training. Rather, we understand the proposed detail to involve the reassignment of relatively experienced attorneys to supplement the DCUSA's resources for combatting narcotics offenses. Moreover, the training of JAGC attorneys for specialized civilian narcotics prosecutions in civilian courts would not appear to be directly related to more than a small fraction of the work customarily done by JAGC attorneys for their military departments.[6]

In sum, we conclude that the Economy Act does not permit the proposed detail on a nonreimbursable basis, unless the 1988 Act specifically authorizes nonreimbursable details.

## 2. The 1988 Act

The 1988 Act gives the Director of National Drug Control Policy broad powers to reassign federal personnel to further the National Drug Control Program. Section 1502(d)(2) empowers the Director to

> direct, with the concurrence of the Secretary of a department or head of an agency, the temporary reassignment within the Federal Government of personnel employed by such department or agency, in order to implement United States drug control policy.

21 U.S.C. § 1502(d)(2). In addition, section 1504(c)(1) permits the temporary assignment of personnel to provide assistance where the Director has designated a specific locale as a "high intensity drug trafficking area."[7]

Neither of these provisions addresses directly whether the temporary reassignment of personnel should be on a reimbursable basis. In addition, nothing in the legislative history of the 1988 Act suggests that Congress intended for details made pursuant to the Director's reassignment authority to be on a nonreimbursable basis. There are no committee reports on the 1988 Act, and statements of individual legislators speak only in general terms of the need for a "drug czar" who would have

---

[6] In addition, a substantial question would be presented concerning the Director's authority to order reassignment for "training" purposes The 1988 Act authorizes the Director to direct, with agency concurrence, temporary reassignment of personnel "in order to implement United States drug control policy" 21 U.S C § 1502(d)(3). See also id. § 1504(c)(1)(A). It is unclear whether the ordering of training details falls within the Director's powers to reassign personnel in order to implement drug control policy It could be argued that details specifically for training in narcotics prosecutions would be within the Director's statutory authority; however, the more narrow the focus of the training, the weaker the argument that the detail would further the objects of the loaning agency's appropriations, so as to be permitted on a nonreimbursable basis.

[7] We are informed by Chuck Wexler, Special Assistant to the Director, that as of this date the Director has not designated the District of Columbia as a "high intensity drug trafficking area," though he may do so in the future

191

broad powers to coordinate action within the federal government related to the drug problem.[8]

The only reference to the issue of reimbursement occurs in section 1502(d)(3), which authorizes the Director to use services, equipment, or personnel of other agencies for administrative purposes on a reimbursable basis. It could be argued by negative inference from this provision that Congress intended the Director's reassignment authority under section 1502(d)(2) to be exercised on a nonreimbursable basis because Congress failed to provide specifically for reimbursement, as in section 1502(d)(3). This construction fails, however, for two reasons.

First, the structure of the 1988 Act cuts against the negative inference of nonreimbursable details. To read the 1988 Act as authorizing nonreimbursable details would create a tension between section 1502(d)(2) and section 1502(c)(6), which requires the Director "to report to the Congress on a quarterly basis regarding the need for any reprogramming or transfer of appropriated funds for National Drug Control Program activities." Section 1502(c)(6) suggests that Congress intended to reserve for itself the decision whether National Drug Control Program policies require changes in appropriations, including any transfer of appropriated funds necessary to accomplish temporary personnel reassignments.[9] Reserving this power would be consistent with the Economy Act and Congressional retention of control over its constitutional power of the purse.

---

[8] A recent Comptroller General decision held that the Economy Act prohibits nonreimbursable details under circumstances in which there were far stronger indications of legislative intent to permit such details. 65 Comp. Gen 635 (1986) There, the National Labor Relations Board planned to detail 15-20 administrative law judges to the Department of Labor to handle a backlog of 20,000 black lung cases. The legislative history of both a 1985 Supplemental Appropriations Act and the fiscal year 1986 Department of Labor Appropriations Act reflected

> congressional concern about the backlog and provide[d] suggestions about how to resolve it The Senate report accompanying the 1985 Supplemental directed the Department [of Labor], to the extent practical, to increase its efforts to temporarily borrow ALJs from other agencies with less pressing workloads For fiscal year 1986, aside from recommending an additional $4 4 million for 15 new ALJs, and a substantial number of attorneys and support positions, the Senate again directed the Department to actively pursue borrowing ALJs from other agencies Both congressional debate and hearings accompanying the 1986 appropriations act contain similar comments

65 Comp. Gen. at 636 (citations and footnote omitted) Despite this legislative history, the Comptroller General concluded that, because the statute itself did not specifically authorize nonreimbursable details, the concerns expressed in the legislative history remained merely generalized concerns that were left unaddressed in the actual legislation. *Id.* at 639 ("[I]t is well settled that suggestions or expressions of congressional intent in committee reports, floor debates and hearings are not legally binding unless they are incorporated either expressly or by reference in an appropriations act itself or in some other statute."). *Accord Train v City of New York*, 420 U.S 35, 45 (1975) (involving issue of Executive compliance with appropriations laws and noting that "legislative intention, without more, is not legislation")

[9] This inference is also supported by changes made from earlier versions of the legislation S 2852, 100th Cong., 2d Sess. (1988) (the "Omnibus Anti-Substance Abuse Act of 1988") at one point provided in sections 1006(d)(2) and (3).

> (2) The Director may *reprogram funds* within National Drug Control Programs

Continued

Moreover, title X, chapter I of the 1988 Act provides specific supplemental appropriations for United States Attorney's Offices for salaries and expenses for increased narcotics prosecution efforts. It reasonably can be inferred that further enhancements of funding, such as by detailing additional personnel pursuant to the Director's temporary reassignment authority, were not intended. *See* 31 U.S.C. § 1301(d) (rule of construction against implied appropriations) (discussed below). *Cf.* United States General Accounting Office, Office of General Counsel, *Principles of Federal Appropriations Law, supra,* at 5-62 to 5-63 (non-augmentation theory);

Second, reading the 1988 Act as authorizing nonreimbursable details requires the conclusion that Congress made an "implied appropriation" through the Director's reassignment authority. The Economy Act provides, however, that "[a] law may be construed to make an appropriation out of the Treasury or to authorize making a contract for the payment of money in excess of an appropriation only if the law specifically states that an appropriation is made or that such a contract may be made." 31 U.S.C. § 1301(d). Thus, reading the 1988 Act to require nonreimbursable details would be inconsistent with the Economy Act. Statutes ordinarily are to be read as consistent with one another, where possible. *See Ruckelshaus v. Monsanto,* 467 U.S. 986, 1017, 1018 (1984) (repeals by implication are disfavored).

Under these circumstances, the 1988 Act should not be read to authorize nonreimbursable details. If nonreimbursable details are necessary to accomplish the Director's goals of implementing national drug control policy, he can report to Congress under section 1502(c)(6) on the need for a transfer of appropriated funds to accomplish the detail of the JAGC attorneys.

---

[9]( continued)

(3) The Director may *transfer,* after providing notification to the Committees on Appropriations of the Senate and the House of Representatives, *an amount not to exceed 5 per centum of the funds appropriated for one such program to another such program* within the same National Drug Control Program agency.

134 Cong Rec 27,467 (1988) (emphasis added). This provision was deleted In its place, the 1988 Act, as enacted into law, provides

The Director shall *report to the Congress* on a quarterly basis *regarding the need for any reprogramming or transfer of appropriated funds* for National Drug Control Program activities.

21 U.S C. § 1502(c)(6) (emphasis added).

The same, early version of S 2852 provided in section 1010(a), with respect to the Director's powers to designate "High Intensity Drug Areas," that:

Upon making such a designation and in order to provide Federal assistance to such area, the Director may —

(2) transfer, after providing notification to the Committees on Appropriations of the Senate and the House of Representatives, an amount not to exceed 5 per centum of the funds appropriated for one such program to another such program, ..

134 Cong. Rec. 27,468 (1988). *See also id.* at 27,414, 27,416 (statement of Sen Nunn, including section-by-section analysis of bill) As passed, the 1988 Act contains no such provision

## Conclusion

We believe that the Economy Act prevents the detail of JAGC attorneys to the DCUSA on a nonreimbursable basis, absent clear language in the 1988 Act that provides for such details. We conclude that no such clear intent is expressed in sections 1502(d)(2) and 1504(c)(1)(A) of the 1988 Act. If the Director determines that the inability to direct the detail of JAGC attorneys to the DCUSA on a nonreimbursable basis impedes his ability to further national drug control policy, section 1502(d)(6) of the 1988 Act provides an appropriate mechanism for seeking a remedy from Congress.

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*